IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KARA KERPAN,

                Plaintiff,              CV-08-811-ST

      v.                                 FINDINGS AND
                                                    RECOMMENDATION
BISCUITS CAFÉ, INC., an Oregon corp.;
SHANNON PRESTON, an individual, d/b/a
Biscuits Café and Biscuits Café Beaverton; LORI
PRESTON, an individual, d/b/a Biscuits Café and
Biscuits Café Beaverton; EDDIE D. PRESTON, an
individual, d/b/a Biscuits; and BARBARA
PRESTON, an individual, d/b/a Biscuits,

                Defendants.

STEWART, Magistrate Judge:

## **INTRODUCTION**

      Plaintiff filed this case to recover unpaid wages and penalties under both federal and state law against her former employer, a restaurant named Biscuits Café, Inc., and its owners. The case was settled in late December 2008 by defendants agreeing to pay plaintiff $3,300.00 plus reasonable attorneys fees and costs (docket #8). Accordingly, the court entered a Judgment on

1 - FINDINGS AND RECOMMENDATION

February 10, 2009 (docket #9). Plaintiff then filed a Motion for Attorney Fees (docket #11) requesting an award of attorney fees and related expenses in the sum of $14,445.24, plus another $3,324.50 incurred since the filing of her motion, for a total of $18,179.24. For the reasons set forth below, that motion should be granted in the sum of $8,721.74.

## FINDINGS

### I.   Failure to Confer

Defendants first complain that plaintiff did not confer with them prior to the filing of this motion as required by LR 7.1(a). The sanction for failing to confer is striking the motion. *Id*.

When the parties were negotiating their settlement in December 2008, plaintiff's attorney, Jon M. Egan, advised that his total attorney fees and costs totaled $10,978.24. Egan Reply Decl., Ex. 5. In response, defendants' attorney, Jim O'Connor, suggested that plaintiff de-link attorney fees from the settlement of her claims, to which plaintiff agreed. *Id*, Exs. 6-9. Later in February 2009, Mr. Egan totaled his fees and costs to give plaintiff "a chance to settle that portion" before incurring additional time preparing a motion for attorney fees and costs; the updated amount was $13,840.24. *Id*, Ex. 11. Mr. O'Connor asked to review the details of Mr. Egan's fees and costs. *Id*, Ex. 12. Mr. Egan refused, stating that his policy was not to provide a breakdown of fees and costs to opposing counsel except as an exhibit to a motion for attorney fees. *Id*, Ex. 13. He then gave defendants the option of either paying that amount or opposing his motion for attorney fees and costs and paying even more fees, emphasizing that "if there is one thing on this earth for which I will fight to the death, it is the right of a plaintiff's attorney to be paid in full for all of his time." *Id*. Mr. Egan made it very clear that he would not negotiate the amount of his fees and would file a motion for attorney fees and costs as soon as the court

2 - FINDINGS AND RECOMMENDATION

entered the Judgment. *Id*. The attorneys then conferred by telephone, and Mr. Egan repeated his position that he would file a motion unless defendants paid his fees and costs in full. *Id*, Ex. 4. Hearing nothing further from defendants, plaintiff filed her motion two days later.

Although this court does not condone Mr. Egan's unwillingness to provide a breakdown of his fees and costs for opposing counsel to review, or his steadfast refusal to negotiate that amount, his conduct does not rise to the level of refusing to confer over the attorney fee motion. Mr. Egan did confer prior to filing his motion but was simply intractable in his position. Therefore, the court should not strike the motion for failing to confer.

## II.     Reasonable Attorney Fees

Defendants do not contest the hourly rate of $105.00 for 9.4 hours incurred by Mr. Egan's assistant, Michele Lauzier, totaling $987.00. In addition, defendants do not contest the related expenses of $103.74 for copies and postage. However, defendants contend that both the hourly rates charged by Mr. Egan of $285.00 in 2008 and $305.00 in 2009, as well as the 46.1 hours he incurred, are unreasonable.

Under federal law, the calculation of an attorney fees award begins with the lodestar figure, "'the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'" *Miller v. Los Angeles County Bd. of Educ.*, 827 F2d 617, 621 (9th Cir 1987), quoting *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 US 546, 564 (1986). There is a strong presumption that the lodestar amount is reasonable. *Jordan v. Multnomah County*, 815 F2d 1258, 1262 (9th Cir 1987).

In calculating the lodestar, the court must consider those factors identified in *Kerr v. Screen Extras Guild, Inc.*, 526 F2d 67 (9th Cir 1975), *cert denied*, 425 US 951 (1976), which

have now been subsumed within the initial calculation. *Cunningham v. County of Los Angeles*, 879 F2d 481, 487 (9th Cir 1988), *cert denied*, 493 US 1035 (1990). Subsumed factors include: (1) novelty and complexity of the issues; (2) special skill and experience of counsel; (3) quality of the representation; (4) the results obtained; and (5) the superior performance of counsel.[1] After calculating the lodestar, the fee may be adjusted by any nonsubsumed factors identified in *Kerr*.

Oregon law lists similar factors for the court to consider in determining the amount of an award of attorney fees in any case in which an award of attorney fees is authorized or required by statute. ORS 20.075(2). It also lists a number of additional factors not specified under federal law, including "[t]he objective reasonableness of the parties and the diligence of the parties in pursuing settlement of the dispute." ORS 20.075(1)(f).

### A.    Hourly Rate

To determine a reasonable hourly rate, the court looks at the "prevailing market rates in the relevant community . . . ." *Blum v. Stenson*, 465 US 886, 895 (1984). These rates are set by determining what a lawyer of comparable skill, experience, and reputation could command in the relevant community for similar litigation. *Id* at n11. The amount of attorney fees awarded should "be governed by the same standards which prevail in other types of equally complex [f]ederal litigation [for civil rights work,] such as antitrust cases[,] and not be reduced because the rights involved may be nonpecuniary in nature." *Id* at 893.

---

[1] A "rote recitation of the relevant factors is unnecessary" so long as the district court adequately explains the basis for the award. *O'Neal v. City of Seattle*, 66 F3d 1064, 1069, n5 (9th Cir 1995).

Mr. Egan has been practicing in Oregon since 2000 and specializes in wage and hour law. Egan Decl., ¶ 7. His office is in Clackamas County, although he handles cases primarily in Portland. O'Connor Decl., ¶ 8(b). To support his hourly rates, he relies on the 2007 Oregon State Bar Economic Survey.[2] This court affords the surveys significant weight in at least establishing a starting point for reasonable rates. The 2007 Survey does not list a specific rate for wage and hour litigation, but does provide that the average rate was $239.00 per hour and the median rate was $225.00 per hour for lawyers in Portland with 7-9 years experience. The category of "Civil Litigation, Plaintiff (excludes Personal Injury)" lists similar rates, although not broken down by years of experience; the average rate was $240.00 per hour and the median was $225.00 per hour. Mr. Egan's requested rate of $285.00 for 2008 would place him between the 75th percentile ($275.00) and the 95th percentile ($360.00) of Portland lawyers with 7-9 years experience and between the median ($225.00) and the 75th percentile ($294.00) for "Civil Litigation, Plaintiff (excludes Personal Injury)."

Mr. Egan justifies his hourly rates at the high end of the rates listed in the 2007 Survey for several reasons. He recites his extensive experience in wage and hour issues, specifically those dealing with restaurant workers like plaintiff. Egan Decl., ¶ 9. He has been involved in several wage and hour collective and class action cases. *Id*. He also relies on the contingent nature of plaintiff's recovery in this case (although he has not submitted his attorney fee agreement), the undesirability of the case due to relatively small damages, defendants' status as small business owners (with concomitant lack of substantial assets and risk of bankruptcy), and the closure of the restaurant several years ago (ensuring additional risk, cost, and expense should

---

[2] Available at http://www.osbar.org/_docs/resources/07EconSurvey.pdf, last accessed April 27, 2009.

5 - FINDINGS AND RECOMMENDATION

the case proceed against the surviving related entities).  *Id*.  Because the latter factors are part and parcel of a contingency fee case where an attorney relies on the ability to collect a judgment to obtain payment, they should not be separately considered.

In addition, he cites two cases in this district that awarded him hourly rates for work, one done in 2005 (with five years of experience) in a wage and hour class action with an award of $210.00 per hour, and one in 2008 in an ADA discrimination case with an award of $285.00 per hour.  However, in the former case (*McElmurry v. U.S. Bank N.A.*, 04-CV-642-HA), Judge Haggerty reduced Mr. Egan's rate (as well as the rates for the other 14 plaintiffs' lawyers) from $250.00 to $210.00 per hour (equal to the 75th percentile rate for attorneys with 4-6 years of experience according to the 2007 Survey).  And in the latter case (*Welch v. Frederickson*, 07-CV-1185-AC), which did not involve wage and hour claims, the request for attorney fees was uncontested and involved aggravating conduct by defendants.  Therefore, the awards in those cases are not particularly persuasive here.

Defendants suggest that a reasonable hourly rate for Mr. Egan should be $225.00.  According to the benchmarks in the 2007 Survey, that suggested rate would place Mr. Egan at the median for attorneys in Portland both with 7-9 years experience and for the category of "Civil Litigation, Plaintiff (excludes Personal Injury)."

Mr. Egan's experience in wage and hour cases should command some premium over and above the median rate.  However, Mr. Egan has made no showing that the prosecution of this case required anything other than an average level of skill in such cases and has offered no affidavits from other attorneys to support the reasonableness of his requested hourly rate.  Based on all of the relevant factors, this court concludes that, in recognition of his level of experience

in wage and hour cases, a reasonable hourly rate for Mr. Egan is no more than $250.00 for both 2008 and 2009 hours.

### B.    Number of Hours

Mr. Egan spent a total of 43.6 hours (46.1 less 2.5 estimated for oral argument on the attorney fee motion) on this case from June 4, 2008 (prior to filing the Complaint on July 7), through February 12, 2009, when he filed the motion for attorney fees. Defendants object to many of these hours. Plaintiff requests an additional 10.9 hours for Mr. Egan and 3.9 hours for his legal assistant for filing the reply in support of the motion for attorneys fees.

#### 1.    Inadequate Documentation

First, defendants note that many entries, such as "conference," "telephone call with . . .," or "correspondence to . . .," without further detail, violate this court's requirement for adequate documentation.[3] Those entries total 9.4 hours. O'Connor Decl., ¶ 9(a). Plaintiff responds that all of these entries deal with client communications for the purpose of either gathering information from the client or explaining the lawsuit's status and progress to the client and objects to giving further detail due to the attorney-client privilege. Egan Reply Decl., ¶ 13. Given that these communications are privileged, this court will not require further detail.

However, it is noteworthy that none of Mr. Egan's time entries are for less than .2 hour. It should not take an experienced attorney 12 minutes to listen to a voice mail message or read a letter or email from a client. Mr. Egan apparently has a minimum charge that does not comport

---

[3] The following message is posted on the Court's website regarding attorney fee petitions:
"Additionally, the Court frequently sees time billed for items such as 'conference', 'telephone call with...', or 'correspondence to...' with no description of the subject of the conference, the call, or the correspondence. This too makes it nearly impossible to assess the reasonableness of the requested time. Because the burden to document the reasonableness of the requested fees is on the attorney requesting fees, fee petitions that fail to support the reasonableness of the request due to one of these problems may be denied, at least in part." U.S. District Court of Oregon, Message from the Court Regarding Attorney Fee Petitions, *available at* http://ord.uscourts.gov/attorney_fee_statement.pdf, last accessed, April 27, 2009.

7 - FINDINGS AND RECOMMENDATION

to the actual time expended. Therefore, reviews of message, letters and emails should be reduced from .2 hour to .1 hour.

### 2. Non-Lawyer Time

Second, defendants point out that on occasion, Mr. Egan performed tasks more appropriately assigned to his assistant, such as entries related to filing and attempted service on other parties, for a total of 2.9 hours. O'Connor Decl., ¶ 9(b). Plaintiff responds that these entries should be viewed as attorney tasks, such as the determination of which address to use and the form of service. This court agrees with defendants. Therefore, 2.9 hours of Mr. Egan's hours should be compensated at the legal assistant's rate of $105.00.

### 3. Estimated Fees

Third, defendants object to 2.5 hours for estimated fees to draft a Reply in support of the motion for attorney fees and oral argument on the motion. Such an estimate is no longer necessary now that plaintiff has submitted a specific request for an additional 10.9 hours for Mr. Egan and 3.9 hours for his legal assistant to draft and file the Reply. Egan Reply Decl., Ex. 3. However, these hours are excessive. In this court's view, a reasonable number of hours for Mr. Egan to draft the Reply is only 5.0 at most. Furthermore, it is not at all clear what the legal assistant did to justify 3.9 hours. Presumably, she compiled the various exhibits attached to Mr. Egan's Reply Declaration. Because it is hard to conceive that 3.9 hours were necessary for that task, her time should be reduced to 2.0 hours.

### 4. Refusal to Engage in Settlement Discussions

Defendants further argue that plaintiff's attorney fees would have been substantially less had she engaged in settlement discussions earlier and not prolonged the litigation. According to

defendants, Mr. Egan refused repeated requests as early as August 14, 2008, to dialogue about a prompt settlement. At that time, defendants were ready and willing to pay whatever losses or penalties plaintiff had suffered from her employment. Between August 14 and November 10, 2008, Mr. O'Connor asked Mr. Egan at least six times to discuss settlement, but received no response. Finally, in a letter dated November 19, 2008, Mr. Egan made a demand of $7,388.55. By late December 2008, the parties agreed to settle for $3,300.00. Had plaintiff been willing to engage in settlement discussion, defendants believe that she could have received an equal or better settlement much earlier in time with far fewer fees expended by both parties.

Plaintiff responds that her attorney could not engage in any settlement discussions until defendants produced their documents because defendants were only willing to pay for documented underpayments. That characterization is not accurate.

In his pre-filing demand letter dated June 17, 2008, Mr. Egan advised that plaintiff had unpaid wages without specifying the amount, demanded that defendants pay what they owed, and requested defendants to provide all documents concerning plaintiff's employment in 45 days. Egan Decl., Ex. 17. Before the 45 days expired, plaintiff filed her Complaint on July 7, 2008, but did not specify the amount of her alleged damages. By letter dated August 15, 2008, Mr. O'Connor advised that he was authorized to accept service on behalf of one defendant; that he had asked his client to gather all documents concerning plaintiff's employment; that if the documents showed an underpayment to plaintiff, his client intended "to make all reasonable efforts to resolve the matter promptly;" and that he would like to confer further with Mr. Egan after returning from vacation on August 25, 2008. *Id*, Ex. 14.

9 - FINDINGS AND RECOMMENDATION

Mr. Egan called Mr. O'Connor on August 27, 2008. *Id*, Ex. 4. Although the attorneys initially agreed to hold a Rule 26 conference the next day, Mr. O'Connor demurred in order not to trigger the timelines for mandatory initial disclosure of a formal discovery plan in favor of proceeding with settlement negotiations. He asked Mr. Egan to prioritize his discovery requests to discuss "in broad terms, the dollar range" of plaintiff's claim. *Id*, Ex. 18. Prior to engaging in any discussions Mr. Egan insisted on first obtaining plaintiff's time and pay records, as well as documents establishing the terms of the employment relationship, to begin calculating an estimate of damages. *Id*, Ex. 19.

On September 8, 2008, Mr. O'Connor advised that he would speed up the gathering of records with the goal of having a set of paperwork in 10 days and again asked Mr. Egan for plaintiff's documentation of underpayments. *Id*, Exs. 21-22. On September 19, after not receiving those records, Mr. Egan advised that he would proceed with the litigation if the documents were not provided by September 24, 2008. *Id*, Ex. 23. Mr. O'Connor immediately responded that he had eight boxes of documents, that his assistant had reviewed all but one box to pull documents related to plaintiff, and that it may take another seven to 10 days to organize, Bates-stamp, and copy the documents. *Id*, Ex. 24. However, the next day on September 25, Mr. O'Connor advised Mr. Egan that the documents were ready to review and again requested plaintiff's documents. *Id*, Ex. 25. The documents then were mailed to Mr. Egan at his request. *Id*, Ex. 26.

Hearing nothing from Mr. Egan and still awaiting receipt of plaintiff's documents, Mr. O'Connor emailed Mr. Egan on October 14 requesting a settlement conference and sent a letter dated November 10, 2008, setting forth his view of the facts in order to move towards a

10 - FINDINGS AND RECOMMENDATION

prompt resolution. O'Connor Decl., Ex., 1, pp. 7-9. Despite his rush to obtain defendants' documents, Mr. Egan's time records show that he did not review those documents for nearly two months until November 19, 2008. Egan Decl., Ex. 1, p. 4. That same day, Mr. Egan responded with a six-page letter, explaining defendants' alleged violations of both federal and state law and making a settlement demand of $7,388.55 plus attorney fees and costs. Egan Reply Decl., Ex. 27. This was the first time plaintiff quantified her damages.

In sum, in the four months between the filing of suit on July 7 and the detailed demand letter of November 19, 2008, Mr. Egan refused repeated requests to discuss settlement. Defendants provided their documents to plaintiff about two months after suit was filed. It took Mr. Egan another two months to review those documents and respond. After finally reviewing the documents, he sent a demand letter after which the parties promptly settled for $3,300.00. Although plaintiff may not have been able to calculate her actual damages with any precision until receiving defendants' documents, she should not have pursued litigation in the first place without some general idea of the nature and amount of her claims. An early dialogue about settlement would have revealed some non-document disagreements that could have been discussed and perhaps resolved and would have allowed the parties to estimate the range of the potential loss. Refusing to hold any discussions with opposing counsel until first obtaining documents is not the type of professional conduct that this court expects of attorneys. Furthermore, under Oregon law, this court must consider "[t]he objective reasonableness of the parties and the diligence of the parties in pursuing settlement of the dispute" when determining the amount of attorney fees to award. ORS 20.075(1).

Under these circumstances, plaintiff's request for $14,445.00 in attorney fees is clearly unreasonable. Based on plaintiff's unwarranted opposition to early resolution of this dispute in favor of litigation, this court concludes that most of the time incurred by plaintiff's attorneys prior to November 19, 2008, should be denied. The initial time incurred from June 4 through June 30 for client intake and research of potential defendants (5.7 hours by Mr. Egan and 2.9 hours by the legal assistant), as well as the time incurred on July 5 to research franchise liability (.6 hour by Mr. Egan), would have been necessary even with early settlement negotiations and, therefore, should be allowed. In addition, the time incurred after November 18, 2008, to settle the case (23.1 hours by Mr. Egan and 4.5 hours by the legal assistant) should be allowed. As a result, the number of hours incurred from June 4, 2008, through February 12, 2009, should be reduced from 43.6 to 28.8 hours for Mr. Egan, and from 8.8 to 7.4 hours for the legal assistant..

### 5.     Pre-filing Demand

Defendants also argue that plaintiff's pre-filing demand letter dated June 17, 2008, was so vague that defendants were unable to understand the nature of plaintiff's claim or to be able to make an offer to avoid litigation. O'Connor Second Decl., ¶ 4. As a result, plaintiff urges the court to deny any attorney fees to plaintiff.

It is true that this letter does not specify the amount of plaintiff's claim and does not specifically state that litigation will be filed. Instead, it demands that unless defendants "pay what you still owe," whatever that may be, Mr. Egan "may be forced to consider other options." A reasonable person reading this letter would understand this to be a threat of litigation, especially since it states that it is an official written notice of nonpayment and a wage claim under ORS 652.150 and 652.200.

12 - FINDINGS AND RECOMMENDATION

The case cited by defendants, *Sahyers v. Prugh, Holliday & Karatinos*, 560 F3d 1241 (11th Cir 2009), is clearly distinguishable. In that case, the district court denied a request for attorney fees to a paralegal under the Fair Labor Standards Act, 29 USC §§ 201-19, because her attorney gave his fellow lawyers no notice by telephone, email, or letter of her claim and made no effort to resolve the dispute before filing suit. The Eleventh Circuit affirmed the district court's refusal to reward uncivil conduct by awarding attorney fees or costs. However, it also "strongly caution[ed] against inferring too much" because "[t]hese kinds of decisions are fact-intensive." *Id* at 1246. In particular, it "put aside cases in which lawyers are not parties." *Id*. This is such a case that must be "put aside." Besides, this court has already addressed the professional conduct in this case by denying most of the attorney fees incurred by plaintiff prior to the demand letter of November 19, 2008.

### 6.   Summary

In sum, plaintiff should be awarded attorney fees and related costs of $8,721.74 calculated as follows:

For Mr. Egan:

    Time 6/4-30/08, 7/5/08, & 11/19/08 to 2/13/09:     28.8 hours

    Time 2/13-28/09 (attorney fee motion):     + 5.0 hours

    Overbilling (reductions of .1 hour on 20 time entries for 6/11/08, 6/13/08, 6/26/08, 12/5/08, 12/09/08, 12/10/08, 12/17/08, 12/29/08, 12/20/08, 1/1/09, 1/5/09, 1/6/09, 1/13/09, 1/23/09, 1/23/09, 1/25/09, 1/26/09, 1/27/09, 2/9/09, 2/11/09):     - 2.0 hours

13 - FINDINGS AND RECOMMENDATION

        Non-lawyer time (12/10/08, 12/15/08, 12/16/08, 12/19/08, 12/22/08, 12/26/08,

        12/29/08, 1/1/09):      - 2.2 hours

            Total hours:     29.6 hours

    29.6 hours @ $250.00/hour = **$7,400.00**

  For the legal assistant:

        Time 6/4-30/08, 7/5/08, & 11/19/08 to 2/13/09:    7.4 hours

        Time 2/13-28/09 (attorney fee motion):    + 2.0 hours

        Lawyer time (12/10/08, 12/15/08, 12/16/08, 12/19/08, 12/22/08, 12/26/08,

        12/29/08, 1/1/09):    + 2.2 hours

           Total hours:     11.6 hours

    11.6 hours @ $105.00/hour = **$1,218.00**

  In addition, plaintiff is entitled to recover her costs of **$103.74.**

## RECOMMENDATION

  For the reasons set forth above, plaintiff's Motion for Attorney Fees (docket #11) should be GRANTED in the sum of $8,721.74 ($7,400.00 + $1,218.00 + $103.74).

## SCHEDULING ORDER

  Objections to the Findings and Recommendation, if any, are due May 15, 2009. If no objections are filed, then the Findings and Recommendation will be referred to a district judge and go under advisement on that date.

  If objections are filed, then a response is due within 10 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will be referred to a district judge and go under advisement.

14 - FINDINGS AND RECOMMENDATION

DATED this 28th day of April, 2009.

                                                            s/ Janice M. Stewart_____
                                                            Janice M. Stewart
                                                            United States Magistrate Judge